1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   REX CHAPPELL,

11            Plaintiff,              No. CIV S-12-0234 MCE GGH P

12       vs.

13   OFFICER FLEMING, et al.

14            Defendants.             ORDER

15   _____/

16           Plaintiff is a state prisoner proceeding pro se.  He seeks relief pursuant to 42

17   U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma

18   pauperis.  This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C.

19   § 636(b)(1).

20           Plaintiff has submitted a declaration that makes the showing required by 28

21   U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

22           Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28

23   U.S.C. §§ 1914(a), 1915(b)(1).  Plaintiff has been without funds for six months and is currently

24   without funds.  Accordingly, the court will not assess an initial partial filing fee.  28 U.S.C.

25   § 1915(b)(1).  Plaintiff is obligated to make monthly payments of twenty percent of the preceding

26   month's income credited to plaintiff's prison trust account.  These payments shall be collected

1

1  and forwarded by the appropriate agency to the Clerk of the Court each time the amount in

2  plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

3        The court is required to screen complaints brought by prisoners seeking relief

4  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

5  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

6  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

7  granted, or that seek monetary relief from a defendant who is immune from such relief.  28

8  U.S.C. § 1915A(b)(1),(2).

9        A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

10 Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989); Franklin v. Murphy,

11 745 F.2d 1221, 1227-28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous

12 where it is based on an indisputably meritless legal theory or where the factual contentions are

13 clearly baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim,

14 however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885

15 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

16       A complaint must contain more than a "formulaic recitation of the elements of a

17 cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

18 speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

19 "The pleading must contain something more...than...a statement of facts that merely creates a

20 suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal

21 Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).   "[A] complaint must contain sufficient

22 factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

23 v. Iqbal, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570,

24 127 S.Ct. at 1974).  "A claim has facial plausibility when the plaintiff pleads factual content

25 that allows the court to draw the reasonable inference that the defendant is liable for the

26 misconduct alleged."  Id.

1          In reviewing a complaint under this standard, the court must accept as true the

2    allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S.

3    738, 740, 96 S.Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the

4    plaintiff, and resolve all doubts in the plaintiff's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411,

5    421, 89 S.Ct. 1843, 1849 (1969).

6          For the reasons outlined below, the complaint will be dismissed in part with leave

7    to amend within twenty-eight days of the filing date of this order.

8    <u>Summary of Complaint</u>

9          Plaintiff essentially seeks relief in connection with his validation as a member of

10   the Black Gorilla Family ("BGF"), and resulting placement in SHU for an indefinite term.  He

11   alleges that certain defendants conspired to validate him and fabricated evidence against him in

12   support of the validation because, among other things, he had filed a lawsuit against a prison

13   official.  He similarly alleges that the evidence in the record is insufficient to sustain his

14   validation, and that defendants violated his due process rights during the validation and

15   classification proceedings.

16         Plaintiff also alleges that certain defendants endangered his life in violation of the

17   Eighth Amendment because the defendants disclosed to other prisoners that plaintiff had suffered

18   a conviction for rape, and also inserted into plaintiff's file a chrono reading that he should be

19   placed only with members of the BGF.

20         Plaintiff further alleges that defendants Perez and McDonald changed his release

21   date, in violation of the Due Process Clause of the Fourteenth Amendment and the Ex Post Facto

22   Clause.  He claims that the change was made based on Senate Bill x3-18, which he does not

23   describe.

24         Attached to plaintiff's complaint is a Third Level Appeal Decision, dated August

25   30, 2011, in which A. Altamirano and D. Foston denied plaintiff's appeal of his good time credit

26   calculation.  <u>See</u> Complaint, Ex. P, Doc. No. 1-2 at 27.  According to that decision, plaintiff

1    appears to be ineligible to earn credits while he is, among other things, in administrative

2    segregation or validated as a gang member.  Altimirano and Foston note that plaintiff has based

3    his appeal on Senate Bill x3-18, but do not refer to it as authority for the decision.

4         As relief, plaintiff seeks, among other things, restoration of his prior release date;

5    reversal of his gang validation; and money damages.

6                        Habeas Corpus and Civil Rights

7         Federal law opens two main avenues to relief on complaints related to

8    imprisonment: a petition for habeas corpus, 28 U.S.C.  2254, and a complaint under the Civil

9    Rights Act of 1871, Rev. Stat.  1979, as amended, 42 U.S.C. § 1983.  Muhammad v. Close, 540

10   U.S. 749, 750, 124 S.Ct. 1303, 1304-1305 (2004) (per curiam).  Challenges to the validity of any

11   confinement or to particulars affecting its duration are the province of habeas corpus, Preiser v.

12   Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); requests for relief turning

13   on circumstances of confinement may be presented in a § 1983 action.  Muhammad v. Close, 540

14   U.S. at 750.  Some cases are hybrids, with a prisoner seeking relief unavailable in habeas, notably

15   damages, but on allegations that not only support a claim for recompense, but imply the

16   invalidity either of an underlying conviction or of a particular ground for denying release short of

17   serving the maximum term of confinement. Id. at 750-51.

18        In Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the

19   United States Supreme Court held that where success in a prisoner's §1983 damages action

20   would implicitly question the validity of conviction or duration of sentence, the litigant must first

21   achieve favorable termination of his available state, or federal habeas, opportunities to challenge

22   the underlying conviction or sentence.  See Muhammad v. Close, 540 U.S. at 751.  Accordingly,

23   in Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme

24   Court applied Heck in the circumstances of a §1983 action claiming damages and equitable relief

25   for a procedural defect in a prison's administrative process, where the administrative action taken

26   against the plaintiff could affect credits toward release based on good-time served.  See

4

1   <u>Muhammad v. Close</u>, 540 U.S. at 751.  In each instance, conditioning the right to bring a § 1983

2   action on a favorable result in state litigation or federal habeas served the practical objective of

3   preserving limitations on the availability of habeas remedies.  <u>Id.</u>

4          Federal petitions for habeas corpus may be granted only after other avenues of

5   relief have been exhausted.  28 U.S.C. § 2254(b)(1)(A).  <u>See</u> <u>Rose v. Lundy</u>, 455 U.S. 509, 102

6   S.Ct. 1198, 71 L.Ed.2d 379 (1982).  Prisoners suing under § 1983, in contrast, generally face a

7   substantially lower gate, even with the requirement of the Prison Litigation Reform Act of 1995

8   that administrative opportunities be exhausted first.  42 U.S.C. § 1997e(a); <u>Muhammad v. Close</u>,

9   540 U.S. at 751.  <u>Heck</u>'s requirement to resort to state litigation and federal habeas before § 1983

10  is not, however, implicated by a prisoner's challenge that threatens no consequence for his

11  conviction or the duration of his sentence.  <u>Muhammad v. Close</u>, 540 U.S. at 751.

12          The Ninth Circuit has held that

13          California's policy of assigning suspected gang affiliates to the SHU is not
            a disciplinary matter, but an administrative strategy designed to preserve
14          order in the prison and protect the safety of all inmates.  Although there
            are some minimal legal limitations,....the assignment of inmates within the
15          California prisons is essentially a matter of administrative discretion.

16  <u>Munoz v. Rowland</u>, 104 F.3d 1096, 1098 (9th Cir. 1997) (citations omitted).  <u>See</u> <u>also</u> <u>Bruce v.</u>

17  <u>Ylst</u>, 351 F.3d 1283, 1287 (9th Cir. 2003).  It would appear, then, that, because validation

18  decisions are not disciplinary, plaintiff may pursue his claims against the defendants in a civil

19  rights complaint.  However, plaintiff also appears to be raising challenges to the calculation of

20  his release date.  According to at least one exhibit, his release date appears to be impacted by his

21  validation, and by his administrative segregation.  This would suggest that plaintiff's challenges

22  to his validation are more appropriately brought in a habeas proceeding, since the validation,

23  even though administrative, has the effect of impacting plaintiff's release date.

24          As explained below, it is not currently clear if plaintiff seeks to challenge the

25  calculation itself, or simply defendants' failure to notify him of the new calculation.  It is also not

26  clear whether the validation is the basis for the change in plaintiff's release date.  Accordingly,

5

1  the court cannot currently assess whether plaintiff's § 1983 claims are barred by <u>Heck</u>, or

2  whether they are more appropriately raised in a habeas petition.  The court notes these issues,

3  though, so that plaintiff may be guided appropriately when amending his complaint.

4                    <u>Count One</u>

5            Plaintiff alleges that defendants Fleming, Amero, Brackett and Harrison targeted

6  plaintiff for validation and SHU confinement because (1) of the way plaintiff to spoke to

7  defendant Harrison after a prison riot, and (2) of plaintiff's civil action against non-defendant

8  Wright.  Plaintiff has articulated a cognizable First Amendment retaliation cause of action

9  against defendants Fleming, Amero, Brackett and Harrison.  <u>See</u> <u>Bruce v. Ylst</u>, 351 F.3d at 1289.

10                    <u>Count Two</u>

11           Plaintiff alleges that defendants Perez, Fleming, Brackett, Harrison, Audette, St.

12  Andre, A. Amero, R. Marquez, J. Harrison, A. Murphy, F. Foulk, and Bryan Kingston violated

13  plaintiff's First Amendment rights by basing his gang validation on the content of a newsletter

14  found in plaintiff's cell.  Plaintiff alleges that defendants are retaliating against him for exercising

15  in activity protected by the First Amendment, and that his validation should be reversed.

16           Plaintiff's allegation, in essence, seems to be that he is not responsible for the

17  content of the newsletter, and that to be validated based on that content violates his First

18  Amendment rights.  The nature of plaintiff's limited First Amendment right, though, is to *receive*

19  the literature, which literature may be subject to prison censorship in certain circumstances.  <u>See</u>,

20  <u>e.g.</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-08, 109 S.Ct. 1874, 1878-79 (1989).

21           Plaintiff has not provided any authority to establish that he has a First

22  Amendment right protecting plaintiff from a prison official's use of the literature as evidence in

23  an investigation of plaintiff, nor has he provided a sufficient factual basis to allow this court to

24  determine whether plaintiff has articulated a cognizable retaliation claim.  Accordingly, this

25  claim is dismissed with leave to amend.

26  \\\\\

1        Count Three

2        Plaintiff alleges that defendants Fleming, Brackett, W. Harrison, A. Amero,

3   Audette, F. Foulk, T. Perez, M. McDonald, R. St Andre, S. Kokkonen, R. Marquez, J. Harrison,

4   A. Murphy, Bryan Kingston, Matthew Cates, and Valdez violated plaintiff's First Amendment

5   rights by using Louis V. Hayes, a known BGF member, as a "direct link" to validate plaintiff as a

6   member of the BGS.  Plaintiff alleges that the factual basis for the link is insufficient to support

7   validation and that Hayes must be dismissed as a source item to validation.

8        Plaintiff's heading for Count Three reads "(First Amendment U.S. Constitution)

9   'The Right To Have Witnesses in Litigation Without Fear of Retaliation.'"  The gist of

10  plaintiff's claim appears to be that he has a right to call a witness in his civil litigation without

11  fear that his relationship with that witness becomes evidence in a disciplinary or administrative

12  proceeding.  The plaintiff cites no authority articulating this right, and the court is not aware of

13  any.  Accordingly, plaintiff does not state a cognizable First Amendment claim in Count Three,

14  and it is dismissed with leave to amend.[1]

15       Count Four

16       Plaintiff alleges that unspecified defendants have violated his First Amendment

17  rights "by promulgating, enforcing, and implementing overbroad rules and/or regulations (not

18  meeting the settlement criteria in Castillo), that unjustifiably curtail plaintiff's limited

19  constitutional rights of free speech."  Complaint at 40, ¶ 51.  While plaintiff does not identify the

20  relevant rules and/or regulations, or the offending defendants, he does allege that the

21  rules/regulations forbid contact with an inmate witness to plaintiff's gang validation, and that he

22  was given no notice of the inmate witness's gang affiliation.

23  \\\\\

24

---

25      [1]  To the extent plaintiff is alleging that his Fourteenth Amendment rights were violated
    because there is insufficient evidence to validate him, his claim is subject to the "some evidence"
    standard, and is covered by the claims he raises in Counts Seven and Twelve, discussed supra.
26  See Bruce v. Ylst, 351 F.3d at 1287-88.

                                        7

1    Plaintiff appears to be alleging that certain rules and regulations have improperly

2    impacted his First Amendment right to association.  However, as noted above, plaintiff does not

3    identify the relevant rules, regulations, or defendants.  Without this minimal information, the

4    court is unable to determine whether plaintiff has raised a cognizable claim.

5    Moreover, to the extent plaintiff alleges that certain rules and regulations do not

6    meet the settlement criteria in Castillo v. Terhune, the court notes that mere violation of that

7    settlement agreement may not provide liability in plaintiff's action.  See Garcia v. Stewart, 2009

8    WL 688887, *7 (N.D.Cal. March 16, 2009) (citing Castillo Settlement Agreement § 30c, which

9    provides that alleged noncompliance with the agreement cannot be the basis for granting an

10   individual inmate relief regarding his gang validation).  Accordingly, plaintiff has not stated a

11   cognizable cause of action in Count Four, and it is dismissed with leave to amend.

12                     Count Five

13   Plaintiff alleges that unspecified defendants have violated his First and Fourteenth

14   Amendment rights because the prison "has never validated other ethnic's based on what's printed

15   or drawn in California Prison Focus newsletter," but that the prison used a particular issue of the

16   newsletter to validate "countless black inmates who litigate against them,....plaintiff included....."

17   Complaint at 41, ¶ 52.

18   This claim fails because it is vague and conclusory.  Plaintiff has not provided the

19   court with a sufficient factual and legal basis for determining whether defendants have violated

20   plaintiff's right to equal protection.

21   Moreover, as noted earlier, plaintiff does not enjoy an unfettered First

22   Amendment right in the content of the publications he reads because prison officials may censor

23   the materials he receives under certain circumstances.  See, e.g., Thornburgh v. Abbott, 490 U.S.

24   at 407-08, 109 S.Ct. at 1878-79.  Plaintiff's allegations in Count Five are accordingly conclusory

25   and insufficient to support relief, and this claim is dismissed with leave to amend.

26   \\\\\\

1      Count Six

2          Plaintiff alleges that defendants Fleming, Harrison, Brackette, Audette, and T.

3   Perez have violated plaintiff's Eighth Amendment rights by telling plaintiff that, in order to be

4   released from SHU, he must de-brief.  In other words, plaintiff alleges that defendants are forcing

5   him to become a snitch, and to manufacture false information, thereby exposing plaintiff and his

6   family to substantial risk of death or serious bodily injury from prisoners.

7          Plaintiff's allegation is speculative, because plaintiff assumes that he will have to

8   manufacture false evidence and that his life will be endangered if he performs as he alleges

9   defendants are compelling him to perform.  Cf., e.g., Harmon v. Berry, 728 F.2d 1407, 1408 (D.

10   Al. 1984) (complaint allowed to proceed where plaintiff alleged that prison officials labeled

11   plaintiff a snitch).  These consequences are too remote to support relief, and plaintiff

12   consequently fails to state a cognizable claim in Count Six.  This claim is dismissed with leave to

13   amend.

14      Count Seven

15          Plaintiff alleges that unspecified defendants have violated plaintiff's Eighth and

16   Fourteenth Amendment rights by maliciously and sadistically manufacturing false materials in

17   order to retaliate against him, using gang validation as their vehicle, and placing plaintiff in SHU

18   for an indefinite term, when defendants know that plaintiff is not a gang member or associate.

19          *Falsification*

20          "The requirements of procedural due process apply only to the deprivation of

21   interests encompassed by the Fourteenth Amendment's protection of liberty and property."

22   Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705 (1972).  State statutes and

23   prison regulations may grant prisoners liberty interests sufficient to invoke due process

24   protections.  Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 2538-2540 (1976).

25   However, the Supreme Court has significantly limited the instances in which due process can be

26   invoked.

1          Prisoners have no constitutionally guaranteed right to be free from false

2  accusations of misconduct, so the mere falsification of a report does not give rise to a claim

3  under § 1983.  See Freeman v. Rideout, 808 F.2d 949, 951-52 (2d Cir. 1986), cert. denied, 485

4  U.S. 982, 108 S.Ct. 1273 (1988).  But see Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir.2004)

5  (a false accusation may constitute retaliation where deprivation of a benefit "was the natural and

6  proximate result of" that accusation and one can infer based on the facts alleged that the accuser

7  "intended that result").  Accordingly, plaintiff has not stated a cognizable Fourteenth Amendment

8  claim based on the alleged use of false materials in his validation proceedings.

9                  *Administrative Segregation - Fourteenth Amendment*

10         Pursuant to Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293 (1995), a prisoner

11  can show a liberty interest under the Due Process Clause of the Fourteenth Amendment only if he

12  alleges a change in confinement that imposes an "atypical and significant hardship ... in relation

13  to the ordinary incidents of prison life."  515 U.S. at 484.

14        The Supreme Court has held that indefinite placement in Ohio's "supermax"

15  facility, where inmates are not eligible for parole consideration, imposed an "atypical and

16  significant hardship within the correctional context."  See Wilkinson v. Austin, 545 U.S. 209,

17  223-25, 125 S.Ct. 2384 (2005).  Since indefinite placement in California's SHU may render an

18  inmate ineligible for parole consideration, this may create a liberty interest in not being placed

19  indefinitely in the SHU which would entitle prisoners to the minimal procedural protections upon

20  initial validation and subsequent inactive reviews.  See Ellis v. Cambra,  No.

21  1:02–cv–05646–AWI–SMS PC, 2010 WL 4137158, *8 (E.D. Cal. Oct.19, 2010).

22         "It is clear ... that prisons have a legitimate penological interest in stopping prison

23  gang activity."  Bruce v. Ylst, 351 F.3d at 1289.  To that end, California has developed

24  procedures to identify and segregate gang members.  See Cal.Code Regs., tit. 15 § 3378.  To

25  comply with due process, prison officials must provide the inmate with "some notice of the

26  charges against him, and the opportunity to present his views to the prison official charged with

1    deciding whether to transfer him to administrative segregation.  Bruce v. Ylst, 351 F.3d at 1287.

2         In addition, the prison's substantive decision to validate a prisoner as a gang

3    member must be supported by "some evidence."  See id. at 1287-88 (applying Superintendent v.

4    Hill standard because validation is an administrative decision, not a disciplinary one).

5         Assuming that plaintiff does have a liberty interest in not being placed in

6    administrative segregation for an indefinite period, it appears from the Complaint that plaintiff

7    has received the minimum protections required under Bruce v. Ylst.  See Complaint, Exhibit D,

8    Doc. No. 1 at 70.  See also Complaint at ¶ 45 (plaintiff describes the contents of his rebuttal to

9    gang validation); Complaint Exhibits E and F (pages from what appear to be plaintiff's written

10   rebuttal to gang validation).  In addition, while plaintiff may allege that his validation is not

11   supported by some evidence, his current claim is vague and conclusory, and he does not identify

12   any individual defendant who was responsible for his deprivation.  Accordingly, plaintiff's claim

13   that his due process rights were violated by his indefinite placement in administrative segregation

14   is dismissed with leave to amend.

15                    *Administrative Segregation - Eighth Amendment*

16        Plaintiff's allegation that the unknown defendants violated his Eighth Amendment

17   rights because they were deliberately indifferent to "the malicious misclassification" of plaintiff

18   is vague and conclusory.

19        The claims raised in count seven are dismissed with leave to amend.

20        Count Eight

21        Plaintiff alleges that defendants Fleming, W. Harrison, G. Brackett, and A.

22   Audette endangered plaintiff's life in violation of the Eighth Amendment when they announced

23   to other inmates in the dayroom that plaintiff is a rapist, and that he was being placed in a cell

24   with a BGF "so they can take care of him."  Plaintiff alleges that defendant Perez, along with

25   other defendants, deliberately tried to have plaintiff killed by placing a chrono in his file that he

26   is only to be housed with other BGF members.

1    Prison officials have a duty to take reasonable steps to protect inmates from

2 violence at the hands of other prisoners.  See, e.g., Farmer v. Brennan, 511 U.S. 825, 833, 114

3 S.Ct. 1970, 1976-77 (1994).  To establish a violation of this duty, the prisoner must establish that

4 prison officials were deliberately indifference to serious threats to an inmate's safety.  Id. at 834.

5 While plaintiff has not alleged that he has actually been injured by other inmates, see Morgan v.

6 MacDonald, 41 F.3d 1291, 1293-94 (9th Cir. 1994), cert. denied, 515 U.S. 1148, 115 S.Ct. 2591

7 (1995), plaintiff's allegations against defendants Fleming, W. Harrison, G. Brackett, A. Audette,

8 and Perez may state a cognizable Eighth Amendment claim.

9    Count Nine

10    Plaintiff alleges that all defendants violated plaintiff's Eighth and Fourteenth

11 Amendment rights when they "intentionally inflicted severe mental and physical suffering....for

12 the purpose of obtaining information or a confession from him (when they know he is not BGF)."

13    Assuming for the purposes of this decision only that freedom from the intentional

14 infliction of mental and physical suffering is a constitutional right, plaintiff's allegations do not

15 state a cognizable claim for relief because they are vague and conclusory.  Plaintiff does not

16 describe the mental or physical suffering inflicted, or specifically identify who inflicted it.

17 Absent such minimal information, this court cannot determine that plaintiff's allegations state a

18 cognizable claim for relief under the Eighth and Fourteen Amendments.  Count Nine is

19 dismissed with leave to amend.

20    Count Ten

21    *Lock Up Review*

22    Plaintiff alleges that he was placed in administrative segregation on October 26,

23 2009, and was not given a "CDC-114-D Lock-Up Order Review" within 72 hours.

24    The process constitutionally due to an inmate placed in segregation depends on

25 whether the placement is disciplinary or administrative.  Toussaint v. McCarthy, 801 F.2d 1080,

26 1099 (9th Cir. 1986).  The Ninth Circuit has determined that California's policy of placing

1   suspected gang members in segregation is an administrative decision, undertaken to preserve

2   order in the prison.  See Bruce v. Ylst, 351 F.3d at 1287; Munoz v. Rowland, 104 F.3d at 1098.

3   When an inmate is placed in segregation for administrative purposes, due process requires only

4   the following procedures:

5               Prison officials must hold an informal nonadversary hearing within a
              reasonable time after the prisoner is segregated.  The prison officials must
6               inform the prisoner of the charges against the prisoner or their reasons for
              considering segregation.  Prison officials must allow the prisoner to
7               present his views....[D]ue process [ ] does not require detailed written
              notice of charges, representation by counsel or counsel-substitute, an
8               opportunity to present witnesses, or a written decision describing the
              reasons for placing the prisoner in administrative segregation.

9

10  Toussaint, 801 F.2d at 1100-01 (footnote omitted).

11          Plaintiff appears to allege that he did not receive a review of his lock-up order

12  within 72 hours.  While there may be *federal* due process procedures necessary to effectuate the

13  due process protection, not all state procedures are encompassed within the federal due process

14  commands.  Rivera v.Illinois, 536 U.S. 148, 158, 129 S.Ct. 1446, 1454 (2009).  The court can

15  find no 72 hour review requirement extant in federal law for the type of liberty interest involved

16  in plaintiff's claim.  Also, plaintiff must identify a defendant responsible for deprivation of any

17  *federal* due process rights.  Accordingly, plaintiff's due process claim regarding the untimely

18  lock-up review is dismissed with leave to amend.

19          *Release Date*

20          Plaintiff additionally alleges that defendants Perez and M. McDonald violated

21  plaintiff's Fourteenth Amendment due process rights when they changed his release date to add

22  five years without telling him in advance, but simply sending him "judicial notice."

23          As noted infra, it is not clear from the current complaint whether plaintiff is

24  challenging the change in his release date, or defendants Perez and McDonald's failure to notify

25  him of the change.  Additionally, among the relief sought by plaintiff is restoration of his 2012

26  release date.  It is accordingly essential that plaintiff clarify his claim in order to allow this court

13

1    to determine whether it can exercise jurisdiction over the claim.  See Docken v. Chase, 393 F.3d

2    1024, 1031 (9th Cir. 2004).  Plaintiff's release date claim is therefore dismissed with leave to

3    amend.

4                          Count Eleven

5            Plaintiff alleges that unspecified defendants deprived him of state-created liberty

6    interests in violation of his due process rights under the Fourteenth Amendment when they failed

7    to comply with provisions of Title 15.

8            There is no independent cause of action for violation of Title 15 regulations.

9    "To the extent that the violation of a state law amounts to the deprivation of a state-created

10   interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no

11   redress."  Sweaney v. Ada County, Idaho,  119 F.3d 1385, 1391 (9th Cir.1997), quoting Lovell v.

12   Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir.1996).  Nor is there any liability under

13   § 1983 for violating prison policy.  Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009)

14   (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir.1997)).  See also Rivera, supra.  Plaintiff

15   cannot state a claim for a violation of his federal rights based upon a prison officials failure to

16   comply with Title 15.  If plaintiff seeks to raise federal claims under § 1983 for the deprivations

17   he describes in Count Eleven, he must identify the source of his federal right, as well as the

18   defendant he claims is responsible for its violation.  This claim is dismissed with leave to amend.

19                          Count Twelve

20           Plaintiff alleges that unspecified defendants violated his federal due process rights

21   when they placed him in SHU, because his gang validation is not supported by some evidence in

22   the record; because plaintiff was not allowed to present his views to the officials making the

23   validation determination; because defendants failed to provide "meaningful" classification

24   reviews; because defendants failed to follow the settlement criteria in Castillo v. Alameda, C-

25   94-2847-MJJ; and because they have forced plaintiff into an "inescapable predicament" since

26   \\\\\

1  plaintiff may only escape SHU by divulging information the defendants know plaintiff does not

2  have.

3          Plaintiff's Count Twelve restates claims previously made.  The first, that his gang

4  validation is not supported by some evidence, may be cognizable, but plaintiff does not identify

5  the responsible defendants.  It is dismissed with leave to amend.

6          The second, that plaintiff was not allowed to present evidence during validation

7  proceedings, is belied by the pleadings, because the Complaint includes plaintiff's description of

8  his rebuttal (see Doc. No. 1 at ¶ 45), and copies of his rebuttal (at Exhibits E and F).  Because

9  plaintiff was given notice and an opportunity to respond, it appears that he has not stated a

10 procedural due process claim.  Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir.1994).  This claim is

11 dismissed with leave to amend.

12         The third, that defendants failed to provide a meaningful classification review, is

13 not cognizable.  Plaintiff does not cite any authority in support of his vague allegation that the

14 review must be meaningful, nor does he explain what he means by the term "meaningful."  Cf.

15 Bruce v. Ylst, 351 F.3d at 1287.  This claim is dismissed with leave to amend.

16         The fourth claim, that unnamed defendants failed to follow the settlement

17 procedure in Castillo, is not cognizable.  As noted above, there is no independent liberty interest

18 created by Castillo, and so plaintiff's vague and conclusory allegation that defendants failed to

19 follow it is not actionable.  This claim is dismissed with leave to amend.

20         Finally, plaintiff's allegation that he must de-brief in order to "escape" SHU is

21 speculative, and is dismissed with leave to amend.

22 Conclusion

23         The following state a cognizable claim: (1) Count One, the retaliation claim

24 against defendants Fleming, Amero, Brackett and Harrison; (2) Count 7 (retaliation), and (3)

25 Count Eight, the endangerment claim against defendants Fleming, W. Harrison, G. Brackett, and

26 A. Audette.  The remaining claims are dismissed with leave to amend.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. <u>See</u> <u>Ellis v. Cassidy</u>, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. <u>Rizzo v. Goode</u>, 423 U.S. 362, 96 S.Ct. 598 (1976); <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. <u>See Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. <u>See Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. No initial partial filing fee is assessed. All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Plaintiff's claims against defendants R. St. Andre, T. Perez, M. McDonald, P. Foulk, S. Kokkonen, R. Marquez, J. Harrison, A. Murphy, Bryan Kingston, and Matthew Cates are dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this Order. Failure to file an amended complaint

1   will result in a recommendation that these defendants be dismissed from this action.

2         4.  Upon filing an amended complaint or expiration of the time allowed therefor,

3   the court will make further orders for service of process upon some or all of the defendants.

4   DATED: April 20, 2012

5                                          /s/ Gregory G. Hollows
                                    UNITED STATES MAGISTRATE JUDGE

6   ggh:rb
    chap0234.B1

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26